UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BOSTON SCIENTIFIC CORPORATION ERISA LITIGATION | Master File No. 1:06-cv-10105-JLT |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' CORRECTED MOTION FOR CLASS CERTIFICATION

Stuart J. Baskin (*Pro Hac Vice*)
John Gueli (*Pro Hac Vice*)
Kirsten Nelson Cunha (BBO #634520)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 848-4000

And

William H. Paine (BBO #550506)
Timothy Perla (BBO #660447)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................iii

INTRODUCTION .................................................................................................................1

FACTUAL OVERVIEW... ....................................................................................................3

I.    The Plan ......................................................................................................................3

II.   The Complaint .............................................................................................................3

ARGUMENT ........................................................................................................................5

I.    FLETCHER AND LOWE LACK STANDING .........................................................5

    A.   Fletcher and Lowe Benefited From the Alleged Artificial Inflation ...............7

    B.   Fletcher and Lowe Have No Cognizable Prudence Claim ...............................8

    C.   Fletcher and Lowe Have No Standing To Pursue Any Other Claims ..............9

II.   PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS OF RULE 23 ...........10

    A.   Fletcher and Lowe Do Not Have Any Claim with Respect to Six of the Seven
        Subjects At Issue in the Complaint, Precluding Certification ........................10

        1.   The Claims of Fletcher and Lowe Are Not Typical .............................10

        2.   Fletcher and Lowe Are Not Adequate Representatives........................11

    B.   The Inflation Claim Cannot Be Certified .....................................................13

        1.   Fletcher's and Lowe's Inflation Claims Are Not Typical ...................13

        2.   The Inflation Claim Suffers from Conflicting Interests ......................14

            (a)   Fletcher and Lowe Have Conflicts with Absent Class Members .....14

            (b)   Absent Class Members Have Conflicts Among Themselves ............15

    C.   The Prudence Claim Cannot Be Certified .....................................................16

        1.   Fletcher's and Lowe's Prudence Claims Are Not Typical ..................16

        2. The Prudence Claim Is Riddled with Conflict...................................................17

   D.   Plaintiffs Fail To Meet Their Burden Under Rule 23(b) ..................................19

        1. Certification Under Rule 23(b)(1)(B) Is Unavailable................................19

        2. Certification Under Rule 23(b)(1)(A) Is Unavailable ...............................20

CONCLUSION .....................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..........................................14, 15

*Allen v. Holiday Universal*, No. 05-5726, 2008 WL 746613 (E.D. Pa. Mar. 18, 2008) ..............20

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) ...................................14

*In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525 (D. Mass. 1991) ....................5, 11, 14

*In re Boston Scientific Corp. ERISA Litig.*, 506 F. Supp. 2d 73 (D. Mass. 2007)....................6, 20

*In re Boston Scientific Corp. Sec. Litig.*, 490 F. Supp. 2d 142 (D. Mass. 2007), *rev'd in part, Miss. Pub. Employees' Ret. Sys. v. Boston Scientific Corp.*, 523 F.3d 75 (1st Cir. 2008)..........................................................................1, 20

*Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036 (9th Cir. 2001)..................................................................................14

*Caltagirone v. N.Y. Cmty. Bancorp, Inc.*, 257 Fed. Appx. 470, 2007 WL 4467655 (2d Cir. Dec. 20, 2007) ..........................................................................6, 11

*Crawford v. Lamantia*, 34 F.3d 28 (1st Cir. 1994)..........................................6

*In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003) .......................9

*E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395 (1977)................................12

*In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613 (E.D. Tex. 2004) ..............19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ..............................................................................15

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982)...............................................5

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006)..................................................................................6

*Gordon v. Hunt*, 98 F.R.D. 573 (S.D.N.Y. 1983)........................................12, 13, 16

*Harley v. Minn. Min. & Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002)............................6, 7, 9

*Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) ................................9

*Hull v. Policy Mgmt. Sys. Corp.*, No. CIV.A.3:00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) .................................................................................................... 9

*Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007) ........................................ 18, 19

*Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598 (6th Cir. 2007) ............................. 6, 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................... 6

*Mathias v. David*, 238 F. Supp. 2d 556 (S.D.N.Y. 2002) ....................................................... 8

*In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) .................................................................................... 9

*Nelson v. Ipalco Enters., Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007) .................................... 8

*Nelson v. Ipalco Enters., Inc.*, No. IP02-477CHK, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003) ............................................................................................................. 20

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) ........... 5, 6

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ............................................................................ 5

*In re Organogenesis Sec. Litig.*, 241 F.R.D. 397 (D. Mass. 2007) .................................. 7, 11, 14

*Osediacz v. City of Cranston*, 414 F.3d 136 (1st Cir. 2005) ................................................... 6

*In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1 (1st Cir. 2005) ............................................. 5

*Rocker Mgmt., LLC v. Lernout & Hauspie Speech Products N.V.*, No. 00-5965 (PGS), 2007 WL 2814653 (D.N.J. Sept. 24, 2007) ............................................................. 14

*Rodriguez v. Gates*, No. CV99-13190GAF(AJWX), 2002 WL 1162675 (C.D. Cal. May 30, 2002) ......................................................................................................... 11, 13

*Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208 (1974) ................................... 12

*Shirk v. Fifth Third Bancorp*, No. 05-cv-49, 2007 WL 1100429 (S.D. Ohio Apr. 10, 2007) ......... 9

*Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J. 2002) ................................. 13

*In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Litig.*, No. MDL 01-1396 JRTFLN, 2004 WL 45504 (D. Minn. Jan. 5, 2004), *rev'd on other grounds*, 425 F.3d 1116 (8th Cir. 2005) ............................................................................... 19

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004)...................................................................5

*Wallin v. Severance Plan of EDS*, 84 Fed. Appx. 193, 2003 WL 23002522 (3d Cir. Dec. 23, 2003) ..................................................................................................................................8

*Yeager's Fuel v. Pa. Power & Light Co.*, 162 F.R.D. 471 (E.D. Pa. 1995) ......................15, 16, 19

## STATUTES

29 U.S.C. § 1102(2)(A) ...........................................................................................................3

29 U.S.C. § 1107(d)(3) ...........................................................................................................3

29 U.S.C. § 1132(a) ................................................................................................................6

Fed. R. Civ. P. 23(a) .............................................................................................................10

Fed. R. Civ. P. 23(b) .............................................................................................................19

28 U.S.C. § 401(k)..................................................................................................................3

## INTRODUCTION

This putative class action for violations of the Employee Retirement Income Security Act ("ERISA") was filed on behalf of certain current and former employees of Boston Scientific Corporation ("Boston Scientific" or the "Company") who participated in the Company's 401(k) Retirement Savings Plan (the "Plan") during the period May 7, 2004, to January 26, 2006 (the "Proposed Class Period"). As the Court will recall, this action followed closely on the heels of and substantially repeats the allegations made in a (now mostly dismissed) securities fraud action against the Company.[1] In particular, the Consolidated Class Action Complaint ("Complaint" or "CCAC") principally alleges that, due to seven different reasons, Boston Scientific stock was artificially inflated and an imprudent investment option for Plan participants throughout the Proposed Class Period. According to the Complaint, when the truth respecting these various matters was finally revealed (at seven different times), the price of Boston Scientific stock dropped (at seven different times), thus causing injury (at seven different times) to those participants whose Plan accounts held investments in Boston Scientific stock.

Originally, six plaintiffs filed putative class action complaints against Boston Scientific and certain of its employees. When this motion for class certification was filed, only four named plaintiffs remained. Since then, two more have withdrawn (May 28, 2008, Affidavit of Kirsten Nelson Cunha ["Cunha Aff."] Exs. 1 & 2), leaving only Douglas Fletcher and Michael Lowe as named plaintiffs.

Fletcher and Lowe cannot represent the proposed class, which is broadly defined to include all participants in or beneficiaries of the Plan whose accounts included investments in Company stock at any time during the Proposed Class Period (*see* Pl. Mot. at 2). There is no dispute that Fletcher and Lowe both completely divested their Plan holdings and cashed out of

---

[1] *See In re Boston Scientific Corp. Sec. Litig.*, 490 F. Supp. 2d 142 (D. Mass. 2007), *rev'd in part, Miss. Pub. Employees' Ret. Sys. v. Boston Scientific Corp.*, 523 F.3d 75 (1st Cir. 2008). The securities class action complaint alleged misstatements regarding several different subjects: recalls of certain of the Company's Taxus stent systems, recalls of the Company's NORS stents and resulting DOJ investigation, litigation with Medinol, and FDA warning letters. Plaintiff appealed the Court's dismissal only as it related to the Taxus issue. The remainder of this Court's decision and its dismissal of all other topics remain undisturbed.

1

the Plan early in the Proposed Class Period, in August and November 2004. Nor is there any dispute that they both sold much more Company stock during the Proposed Class Period than they purchased. Remarkably, plaintiffs' motion makes no mention of these crucial facts, and thus wholly fails even to consider the consequences of these facts regarding the inability of Fletcher and Lowe to serve as class representatives.

These omitted facts are fatal to class certification. Fletcher's and Lowe's status as net sellers of Boston Scientific stock means that neither of them suffered any loss from the supposed fiduciary breaches that are alleged in the Complaint. To the contrary, they both *benefited* from any alleged artificial inflation of Boston Scientific stock price. Given that neither of them suffered any cognizable injury-in-fact, they lack standing. And where the proposed class representatives lack standing, no class can be certified, and the complaint must be dismissed.

Separate and apart from this threshold failure, Fletcher and Lowe do not satisfy the requirements of Rule 23(a), for several reasons. First, because Fletcher and Lowe divested their interests in the Plan so early in the Proposed Class Period, they have no claim with respect to six of the seven items of alleged wrongdoing that are the subject of the Complaint. Not only does this mean that their claims are atypical of the proposed class, but it renders them inadequate class representatives. Second, the artificial inflation claim cannot be certified both because Fletcher's and Lowe's inflation claims are atypical (because they benefited from the alleged inflation, and, in addition, are subject to unique reliance and causation defenses), and, moreover, because the inflation claims of the named plaintiffs and the absent class members are subject to numerous conflicts. Third, the imprudence claim similarly cannot be certified, again because the claims of Fletcher and Lowe are atypical and because the individual claims of the proposed class members are subject to multiple conflicts. The lone Circuit Court of Appeals to consider a similar situation vacated certification of a proposed ERISA class. Finally, plaintiffs also fail to satisfy Rule 23(b), because their claims present individualized questions, and because their claim for injunctive relief has been dismissed.

2

## FACTUAL OVERVIEW

### I.    The Plan

The Plan is a "qualified cash or deferred arrangement" under Section 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k), and an "employee pension benefit plan" and an "eligible individual account plan" under ERISA, 29 U.S.C. §§ 1102(2)(A), 1107(d)(3). (CCAC ¶ 49.) The Plan provides individual accounts for each participant. (*See id.* at ¶¶ 2, 42.)

Throughout the Proposed Class Period, eligible employees could make voluntary payroll contributions to the Plan, and, effective January 1, 2005, the Company provided matching contributions. (*See id.* at ¶¶ 5, 50.)  Both the employee's payroll contributions and the Company's matching contributions were invested at the employee's direction, and the employee retained the right to stop, start, and redirect his or her contributions (including moving account balances) as and when he or she chose to do so. (CCAC Ex. D at 147.) During the Proposed Class Period, the Plan offered approximately ten separate investment options, including the Boston Scientific Corporation Common Stock Fund (the "Company Stock Fund"). (CCAC ¶ 55.)  Plan participants who invested in the Company Stock Fund received units of the Fund, which represented an indirect interest in Boston Scientific common stock.   The value of Company Stock Fund units is highly correlated with the value of Boston Scientific stock. (*See* May 27, 2008, Affidavit of David J. Ross ("Ross Aff." ¶ 8.)

### II.    The Complaint

Boston Scientific is a worldwide leader in the medical device industry, and is a preeminent developer, manufacturer, and distributor of coronary stents (tiny, mesh tubes implanted in patients to prop open arteries to facilitate blood flow). The Complaint alleges that defendants either knew or should have known that the Company's public disclosures regarding possible risks faced by the Company were misleading. (*See* CCAC ¶¶ 87, 159, 163-64, 170.)[2]

---

[2] Boston Scientific is the named fiduciary in the Plan. (CCAC Ex. F at 1.)  The Company has designated an Investment Committee (the "Committee") to perform the functions of the Plan fiduciary for purposes of ERISA. (CCAC ¶ 31.)  The Committee Defendants are Lawrence C. Best, Robert G. MacLean, Lucia L. Quinn, Paul W. Sandman, Richard A. Duffy, Warren Clark III, Rose Marie Brana Haslinger, and Jamie Rubin. (*Id.* at ¶¶ 32-40.) The Company's directors (the "Director Defendants") were charged with the responsibility to select the Committee

The allegedly misleading disclosures related to seven different subjects: (1) the manufacture and marketing of the Company's Taxus stent systems, certain of which were voluntarily recalled in July and August 2004 (the "Taxus recall") (*id.* at ¶¶ 122-45); (2) the Company's 1998 recall of its NORS stents and resulting Department of Justice investigation (the "DOJ Investigation"), which was settled in June 2005 (*id.* at ¶¶ 89-109); (3) litigation between the Company and one of its stent suppliers, Medinol Ltd. (the "Medinol Litigation"), which was filed in 2001 and settled in September 2005 (*id.* at ¶¶ 110-21); and (4)-(7) regulatory compliance warning letters from the Food and Drug Administration (the "FDA Warning Letters") dated May 18, 2005, August 1, 2005, August 10, 2005, and January 25, 2006 (*id.* at ¶¶ 146-58). According to the Complaint, when the "truth" respecting these matters was publicly revealed during the period from 2004 through 2006 – i.e., in the wake of the Taxus recalls, upon the announcements of the settlement of the DOJ Investigation and then the Medinol Litigation, and upon publication of each of the different FDA Warning Letters – the price of Boston Stock fell, each time causing losses to the Plan. (*Id.* at ¶¶ 88, 158, 195, 204, 212.)

The Company's allegedly misleading disclosures respecting these matters (and the individual defendants' supposed knowledge respecting those misstatements) are packaged as four breach of fiduciary duty causes of action. First, plaintiffs allege that "[t]he Defendants knew or should have known that the value of Company Stock was artificially inflated during the Class Period, creating an unacceptable risk of loss" (the "Inflation Claim"). (*Id.* at ¶¶ 87, 192-96.) Second, plaintiffs allege that "[t]he Defendants breached their duties to prudently and loyally manage the Plan's assets because during the Class Period Defendants knew or should have known that Company Stock was not a prudent investment for the Plan" (the "Prudence Claim"). (*Id.* at ¶¶ 87, 186-90.) Third, plaintiffs allege that Boston Scientific and the Director Defendants failed to properly monitor and appoint the Committee responsible for oversight and

members. (*Id.* at ¶ 29.) The Director Defendants are James R. Tobin, Peter M. Nicholas, John E. Abele, Joel E. Fleischman, Ernest Mario, Ph.D., Uwe E. Reinhardt, John E. Pepper, Ursula M. Burns, Marye Anne Fox, Ph.D., Ray J. Groves, N.J. Nicholas, Jr., and Senator Warren B. Rudman. (*Id.* at ¶¶ 17-29.)

management of the Plan. (*Id.* at ¶¶ 198-205.) <u>Fourth</u>, plaintiffs allege that the Committee Defendants and Director Defendants breached their duty to avoid conflicts by failing to "place the interests of the Plan's participants above the interests of themselves and the Company with respect to the Plan's investment in Boston Scientific Stock." (*Id.* at ¶¶ 207-13.)

## ARGUMENT

"The ultimate decision to certify a class is, of course, a discretionary one." *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 5 (1st Cir. 2005). In considering whether class certification is appropriate, the Court need not defer to plaintiffs' allegations and rote recitation of the class certification standards, and instead should engage in a "rigorous analysis" respecting the named plaintiffs' ability to satisfy those standards. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see, e.g., In re PolyMedica Sec. Litig.*, 432 F.3d at 5-6. The Court should "probe behind the pleadings, to formulate some prediction as to how specific issues will play out in order to assess whether the proposed class meets the legal requirements for certification." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008); *see, e.g., Tardiff v. Knox County*, 365 F.3d 1, 4-5 (1st Cir. 2004) ("class action machinery is expensive and in our view a court has the power to test disputed premises early on if and when the class action would be proper on one premise but not another"). Here, a rigorous analysis of the class certification requirements, considered in the light of the particulars of the Complaint and the particular circumstances of Fletcher and Lowe, reveals that no class at all should be certified, much less the broad and omnibus class that has been proposed.

## I.    FLETCHER AND LOWE LACK STANDING

The proposed class representatives lack standing – both constitutional standing and statutory standing.

Individual constitutional standing is a threshold requirement for class certification. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *accord, e.g., In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991) ("A federal district court may not permit a plaintiff to circumvent the standing requirement simply because the plaintiff files his

suit as a class action."). "Merely because [p]laintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007); *accord, e.g., Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006); *Harley v. Minn. Min. & Mfg. Co.*, 284 F.3d 901, 907 (8th Cir. 2002).

Plaintiffs bear the burden of demonstrating standing. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d at 14. This requires Fletcher and Lowe to show that they have suffered "an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotations omitted); *see Osediacz v. City of Cranston*, 414 F.3d 136, 141 (1st Cir. 2005) ("... the core requirements of constitutional standing ... include[e] the bedrock requirement that the plaintiff herself have suffered an injury in fact ..."). Plaintiffs can make no such a showing.

Similarly, plaintiffs lack statutory standing. They do not qualify as Plan "participants" entitled to sue under ERISA, *see* 29 U.S.C. § 1132(a), because they are former employees who admittedly have no reasonable expectation of returning to the employ of Boston Scientific and have cashed out of the Plan, *see In re Boston Scientific Corp. ERISA Litig.*, 506 F. Supp. 2d 73, 74-75 (D. Mass. 2007). The Court found, at the pleading stage, that plaintiffs had *alleged* statutory standing because they claimed that "'defendants' alleged breach of fiduciary duty had a direct and inevitable effect on [their] benefits.'" *See id.* at 76 (quoting *Crawford v. Lamantia*, 34 F.3d 28, 33 (1st Cir. 1994)). But this allegation has not withstood the class discovery process, thus requiring dismissal. *Crawford*, 34 F.3d at 32; *see Caltagirone v. N.Y. Cmty. Bancorp, Inc.*, 257 Fed. Appx. 470, 474 (2d Cir. 2007) ("Because these plaintiffs cannot show that they suffered any losses as a result of the alleged fiduciary breaches, neither plaintiff has a colorable claim for benefits with statutory standing to sue.").

### A.    Fletcher and Lowe Benefited From the Alleged Artificial Inflation

With their Inflation Claim, plaintiffs allege that Plan participants who purchased units of the Company Stock Fund during the Proposed Class Period were injured by the defendants' claimed breach of duty because those participants paid an artificially high price for their units. (CCAC ¶¶ 87, 171-72, 192-95.)  As a matter of logic and simple math, however, to the extent that Plan participants sold units of the Company Stock Fund during the Proposed Class Period, they necessarily benefited from the alleged artificial inflation because they received that inflated price upon the sale. (Ross Aff. ¶ 13.)

Both Fletcher and Lowe sold *all* of their Company Stock Fund units in 2004.  On a net basis, they sold much more than they bought during the Proposed Class Period:  Fletcher bought 65.47 units and sold 488.58; Lowe bought 161.41 units and sold 5,605.97.[3]  (*Id.* at ¶¶ 15-16, Exs. D & E.)  Because they sold many more units than they purchased, both Fletcher and Lowe necessarily benefited from the alleged artificial inflation. (*Id.* at ¶¶ 14-16.)

Having benefited from the alleged artificial inflation by virtue of their status as net sellers, the named plaintiffs have not suffered any injury. *See, e.g., In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 401-03 (D. Mass. 2007) (proposed class representative who sold more stock than he bought during the proposed class period benefited from the allegedly inflated price and thus suffered no loss).  Fletcher and Lowe therefore lack standing to pursue the Inflation Claim, requiring its dismissal. *See, e.g., Loren*, 505 F.3d at 608 (dismissing putative ERISA class action because named plaintiffs' alleged injury was "too speculative to establish constitutional standing"); *Harley*, 284 F.3d at 906 ("the limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan.") (emphasis in original).

---

[3] Lowe testified that when he left Boston Scientific in 2004, he took a final distribution from the Plan in an "in kind" transfer of shares. (Cunha Aff. Ex. 7 at 40.)  In fact, however, Lowe's direct rollover to an IRA was a cash transfer. (*Id.* Exs. 4 & 5.)  To the extent Lowe has shares of Boston Scientific stock from that rollover, they were purchased by him *after* he cashed out of the Plan, in other words, in transactions not subject to ERISA.

**B.      Fletcher and Lowe Have No Cognizable Prudence Claim**

With their Prudence Claim, plaintiffs allege that the same undisclosed risks that resulted in the artificial inflation of Boston Scientific's stock also meant that the stock was too risky, and hence an imprudent investment that should not have been offered as an option to Plan participants. (*See* CCAC ¶¶ 5, 87-88, 163, 187.)  The Prudence Claim is based on identical allegations as is the Inflation Claim; it is essentially the same claim with a different label.  Since neither Fletcher nor Lowe suffered any injury-in-fact from the alleged artificial inflation, they cannot manufacture an injury by repackaging their inflation allegations as "imprudence" allegations. *See, e.g., Wallin v. Severance Plan of EDS*, 84 Fed. Appx. 193, 2003 WL 23002522, at *3 (3d Cir. Dec. 23, 2003) (affirming summary judgment dismissing ERISA class action alleging breach of fiduciary duty because that claim "simply repackage[d] [plaintiff's] contention that [defendant] 'actively concealed' information," which claim had been rejected).

But even if the Prudence and Inflation Claims were considered to be distinct, the named plaintiffs have suffered no cognizable injury with respect to the Prudence Claim.  For both Fletcher and Lowe, the value of their Company Stock Fund units was highest on June 1, 2004, at $29.39 per unit. (*See* Ross Aff. ¶¶ 32, 34, Exs. J & K.)  When Fletcher and Lowe sold their Company Stock Fund units they were valued at $25.07 and $23.43, respectively. (*Id.* at Exs. D & E.)  According to the Complaint, all of those values were artificially inflated. (*See* CCAC ¶¶ 6, 87, 88; Ross Aff. ¶ 9.)  Plaintiffs cannot claim as injury the diminution in value from the high point of the alleged artificial inflation to the still inflated value at the time of sale.  Put simply, Fletcher and Lowe have no right to recover *more* from the alleged artificial inflation. *See, e.g., Mathias v. David*, 238 F. Supp. 2d 556, 579 (S.D.N.Y. 2002) (one cannot recover for an alleged injury based on a claimed right to profit from another's wrongdoing).

Viewed another way, Fletcher and Lowe cannot claim that they were injured because defendants complied with the securities laws and thus did not "tip" the Plan participants to non-public inside information and withdraw the Company Stock Fund as an investment option. As Judge Posner recently noted, it "probably would have been unlawful … to sell the

8

[company] stock held by the pension plan on the basis of inside knowledge of the company's problems. If so, there are no damages, and indeed no breach of fiduciary duty; for the fiduciary's duty of loyalty does not extend to violating the law." *Harzewski v. Guidant Corp.*, 489 F.3d 799, 808 (7th Cir. 2007).[4] Because Fletcher and Lowe have suffered no cognizable injury, they have no standing to pursue the Prudence Claim, and that claim must also be dismissed.

### C.    Fletcher and Lowe Have No Standing To Pursue Any Other Claims

The failure to monitor and conflict of interest claims are based on the same underlying allegations as are the Inflation and Prudence Claims. (*See* CCAC ¶¶ 198-213.) Indeed, it is the alleged artificial inflation and supposed imprudence that serves as the foundation for the failure to monitor and conflict of interest claims. (*See id.* at ¶¶ 87, 177-79, 180.) Thus, given that Fletcher and Lowe can identify no cognizable injury-in-fact due to the alleged artificial inflation or imprudence, they have suffered no loss that would give them standing to sue for any supposed failure to monitor or conflict of interest. *See Harley*, 284 F.3d at 908 ("the failure to investigate and monitor claims were properly dismissed because plaintiffs suffered no injury-in-fact."). Simply put, because the failure to monitor and conflict of interest claims do not provide independent bases for relief, they should be dismissed for the same reasons as the Inflation and Prudence Claims.[5]

---

[4] *See Nelson v. Ipalco Enters., Inc.*, 480 F. Supp. 2d 1061, 1108 (S.D. Ind. 2007) ("ERISA should not be interpreted to give some shareholders, those in ERISA plans, special access to information not presented to other shareholders in the publicly traded corporation."); *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, at **6-7 (N.D. Cal. Sept. 30, 2002) ("the fiduciaries were not obligated to violate the securities laws or other laws merely to protect the interests of Plan participants."); *Hull v. Policy Mgmt. Sys. Corp.*, 2001 WL 1836286, at *9 (D.S.C. Feb. 9, 2001) (rejecting suggestion that fiduciaries could be liable to plan participants for failing to act on "inside" information).

[5] *See, e.g., In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003) ("Counts Three through Six of the Complaint [duty to monitor, duty to avoid conflicts, § 405 liability, and knowing participation in a fiduciary breach] do not provide independent grounds for relief, but rather depend upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA. Because neither the 'misrepresentation' claim, nor the 'prudence' claim properly states claims for a breach of fiduciary duty under ERISA, these remaining counts must also be dismissed."); *see also Shirk v. Fifth Third Bancorp*, 2007 WL 1100429, at *20 (S.D. Ohio Apr. 10, 2007) ("derivative [ERISA] claims are subject to dismissal where the underlying [prudence and misrepresentation] claims fail to state a claim for which relief can be granted").

## II.    PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS OF RULE 23

The named plaintiffs' lack of standing requires dismissal of this action in its entirety. But even beyond the absence of constitutional and statutory standing, this case cannot be certified as a class action because Fletcher and Lowe cannot satisfy the requirements of Rule 23. Pursuant to Rule 23(a), they must demonstrate: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *See* Fed. R. Civ. P. 23(a). The failure to prove any one of these elements precludes certification. Here, typicality and adequacy are not satisfied. In addition, plaintiffs must satisfy at least one of the subsections of Rule 23(b), but cannot. *See infra* § II.D.

### A.    Fletcher and Lowe Do Not Have Any Claim with Respect to Six of the Seven Subjects At Issue in the Complaint, Precluding Certification

As noted above, the Complaint alleges wrongdoing in connection with several discrete and unrelated subjects spanning a nearly two-year period. Thus, the claims of any individual putative class member will be based on one or more of several different matters depending upon when they bought, sold, and/or held Company Stock Fund units: (1) the Taxus recalls in July and August 2004; (2) the DOJ investigation that was settled on June 24, 2005; (3) the Medinol litigation that was settled on September 21, 2005; and (4) – (7) the four different FDA warning letters of May 18, 2005, August 1, 2005, August 10, 2005, and January 25, 2006. Because Fletcher and Lowe individually could have no claims related to anything other than the Taxus recalls (having cashed out of the Plan shortly thereafter), they fail to satisfy the typicality and adequacy requirements of Rule 23(a).

### 1.    The Claims of Fletcher and Lowe Are Not Typical

Plaintiffs devote all of two sentences to trying to show typicality: "... each Plaintiff held Boston Scientific stock in their individual account during the Class Period. ... Furthermore, each Plaintiff, like all Class members, alleges that Defendants' ERISA violations affect[ed] the Company stock investments of all Plan participants during the Class Period." (Pl. Mem. at 11-12.) These "arguments" constitute superficial generalities, not a rigorous analysis; further, they wholly ignore the reality of the Complaint and the situation of the named plaintiffs.

At a minimum, typicality requires that the named plaintiffs' claimed injuries arise from the same events as the claimed injuries of the absent class members. *In re Bank of Boston Sec. Litig.*, 762 F. Supp. at 1532; *see, e.g., In re Organogenesis Sec. Litig.*, 241 F.R.D. at 400-01 ("The operative question is whether a lead plaintiff will necessarily present the absent class members' claim in presenting his own."). Here, because the named plaintiffs have no injury and hence no claim related to six of the seven events that are the subject of the Complaint, their claims are atypical.

Fletcher and Lowe cashed out of the Plan in Fall 2004 and thus did not hold any Company Stock Fund units when revelations respecting six of the seven subjects discussed in the Complaint are alleged to have caused harm to the putative class. (Cunha Aff. Exs. 3, 4, 5, 6 at 57-59, 7 at 62-63.) In other words, the claimed drops in the price of Boston Scientific stock due to disclosures of the "truth" respecting the DOJ Investigation, the Medinol Litigation, and the four FDA Warning Letters (*see* CCAC ¶¶ 106, 121, 148, 150, 152, 153) all took place *after* Fletcher and Lowe had sold all of their Plan holdings. Fletcher and Lowe thus can have no conceivable claim or injury with respect to those matters. *See Caltagirone*, 257 Fed. Appx. at 474. Their limited, Taxus-specific claims are not typical of a proposed broad class whose members are alleged to have claims related to all seven (or some other subset) of the matters discussed in the Complaint.[6]

## 2.    Fletcher and Lowe Are Not Adequate Representatives

As with their argument respecting typicality, plaintiffs' attempted demonstration of adequacy disregards their own Complaint and the fact that they cashed out of the Plan early in the Proposed Class Period. (*See* Pl. Mot. at 12-13.) Plaintiffs thus ignore that one aspect of the adequacy requirement is that "a class representative must be part of the class and 'possess the

---

[6] *See, e.g., In re Organogenesis Sec. Litig.*, 241 F.R.D. at 403 (denying class certification where proposed lead plaintiff had "not suffered a loss, his claim fails, and he is not a typical representative of the class"); *Rodriguez v. Gates*, 2002 WL 1162675, at *7 (C.D. Cal. May 30, 2002) ("Because the claims of the class Rodriguez seeks to represent are not [as] limited [as those of Rodriguez], and because Rodriguez has no standing to press a number of those claims, Rodriguez's claims cannot be said to be typical of the claims of class members."); *see also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1531 ("even where a named class representative may properly pursue a claim, courts have strictly limited the class period to the period for which that named representative has standing.").

same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  A putative class representative who has no incentive to pursue the claims of absent class members not only is atypical, but also inadequate.

Other than with respect to the Taxus stents, all of defendants' claimed misstatements came to light *after* Fletcher and Lower sold their Company Stock Fund units. Accordingly, Fletcher and Lowe have no legal incentive to pursue claims related to the DOJ Investigation, the Medinol Litigation, or any of the four FDA Warning Letters.

In similar contexts, courts have denied certification.  In *Gordon v. Hunt*, 98 F.R.D. 573 (S.D.N.Y. 1983), for instance, the court found that the proposed class representative was not adequate because he did not have an incentive to prove all of the alleged misconduct.  In *Gordon*, the plaintiff sought to certify a class of all individuals who sold silver futures contracts "short" from August 7, 1979, to March 26, 1980.  The proposed class was comprised of 10,000 members who traded 60 contracts on three exchanges over eight months. *Id.* at 575.  The named plaintiff, however, only sold "short" for a three-week period in August 1979.  The court found "unconvincing [plaintiff's] argument that he will have sufficient incentive to prove all of the facts and circumstances necessary for recovery by class members who traded after [he left the market]." *Id.* at 579.  The court noted "it is unrealistic to expect [plaintiff] to have equal incentive to develop all of the intricate facts occurring after August in this exceptionally complex case, once he has proven the existence of a conspiracy in August." *Id.*

Likewise, here, the Complaint concerns seven different subjects, each one of which could be its own highly complicated, stand-alone case.  The facts and evidence necessary to prove a supposed breach with respect to any one of those events will be entirely different from the facts and evidence that will bear on the others.  For instance, defendants already have produced over 1.2 million pages of documents related to the Medinol and DOJ allegations.  The documents deal with the Medinol relationship and the NORS stent recall – two extraordinarily complicated topics that were respectively the subject of a four-year litigation with Medinol and a

six-year DOJ investigation. The documents related to these two issues are entirely unrelated to the Taxus recalls and FDA Warning Letters, which are, moreover, unrelated to each other. The discovery and proof concerning each of these various subjects will involve different witnesses, different evidence, and different arguments.

It is fiction to suggest that Fletcher and Lowe would have an interest in pursuing the massive undertaking of proving claims based on allegations concerning the DOJ Investigation, the Medinol Litigation, and the four FDA Warning Letters, given that neither of them held any Plan investment and thus suffered no injury when disclosures respecting those matters allegedly caused losses to the proposed class. Because they are not in reality members of the class they purport to represent, Fletcher and Lowe are inadequate representatives.[7]

### B.    The Inflation Claim Cannot Be Certified

Even considered on its own, the Inflation Claim cannot be certified as a class action, for at least two reasons:  (1) Fletcher's and Lowe's claims are atypical; and (2) Fletcher, Lowe, and the class members have conflicting interests with respect to the Inflation Claim.

#### 1.    Fletcher's and Lowe's Inflation Claims Are Not Typical

As noted, Fletcher and Lowe benefited from the alleged artificial inflation. That alone renders them atypical. Moreover, they both admitted to never having read any of Boston Scientific's public disclosures respecting any of the subjects discussed in the Complaint, even though that information was expressly incorporated into the Plan information provided by the Company. (Cunha Aff. Exs. 6 at 37-38, 7 at 126-29, 132.) Indeed, Fletcher admitted making his Plan investment decisions in reliance on non-public information not available to all Plan

---

[7] *See Gordon*, 98 F.R.D. at 579; *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 638 (D.N.J. 2002) ("The proof required to succeed under the Securities Act claims differs from that required under the Exchange Act claims … It may well be that Garden State does not have the same qualitative incentive to pursue the Securities Act claims as those who were directly injured in the Secondary Offering because only the secondary purchasers will benefit from any recovery from the underwriters."); *Rodriguez*, 2002 WL 1162675, at *8 ("While Rodriguez's interest in establishing the existence of a policy or practice may generally align with the interests of the class members, his interest is much too narrow to adequately represent the proposed class. That is, he has no incentive to establish policies or practices which might aid the *Monell* claims of class members who have substantive claims different than his own …").

participants (*id.* Ex. 6 at 63-65), and Lowe acknowledged that he likely would have made different investment decisions had he bothered to read the Company's disclosures (*id.* Ex. 7 at 130-31). In short, because the named plaintiffs' Inflation Claims are susceptible to the defenses that neither suffered any actual injury, and, further, cannot establish reliance or causation, their claims are not typical. This renders Fletcher and Lowe unsuitable as class representatives. *See, e.g., In re Organogenesis*, 241 F.R.D. at 403; *Bank of Boston*, 762 F. Supp. at 1534.

### 2.    The Inflation Claim Suffers from Conflicting Interests

### (a)    Fletcher and Lowe Have Conflicts with Absent Class Members

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To be an adequate class representative, "the interests of the representative party [must] not conflict with the interests of any of the class members ..." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *see, e.g., In re Bank of Boston*, 762 F. Supp. at 1534. In purely conclusory fashion, plaintiffs contend that "the proposed representatives have no interest that conflict with those of the absent Class members. To the contrary, their interests are unified with those of the Class." (Pl. Mot. at 12.) That is not true.

Fletcher and Lowe, having benefited from the alleged artificial inflation, have no interest in pursuing the Inflation Claim. Moreover, they have an affirmative disincentive to do so: if artificial inflation is proven, their resulting trading gains likely would have to be offset against any potential recovery on their Prudence Claim (assuming for purposes of argument that they could even have a cognizable Prudence Claim, *but see supra* § I.B.) *See Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1047 (9th Cir. 2001) (a fiduciary is liable only for the total aggregate loss of all related breaches and may reduce its liability to reflect only the net loss suffered) (citing Restatement (Third) of Trusts, § 213); *see also, e.g., Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prods. N.V.*, 2007 WL 2814653, at *14 (D.N.J. Sept. 24, 2007) (plaintiffs' losses should be netted against profits attributable to the same fraud, and collecting authorities). This type of conflict – between Fletcher and Lowe, who may

14

be disincentivized to pursue the Inflation Claim, and those absent class members who were not net sellers during the Proposed Class Period – precludes certification.[8]

**(b)    Absent Class Members Have Conflicts Among Themselves**

Even among the absent class members themselves, there are multiple conflicts. There are 467 potential class members who sold Company Stock Fund units during the Proposed Class Period, but made no purchases. (Ross Aff. ¶¶ 19-20, Ex. F.)  Like Fletcher and Lowe, these 467 net sellers benefited from the alleged artificial inflation and would have no interest in pursuing (and in fact may be disincentivized to pursue) the Inflation Claim.  Their interests therefore conflict with the 1,169 class members who bought but did not sell during the Proposed Class Period and thus have an interest in pursuing the Inflation Claim.  (*Id.* at ¶ 21, Ex. F.)

In addition, 4,450 proposed class members both bought and sold during the Proposed Class Period. (*Id.* at ¶ 23.) Some of them, like Fletcher, Lowe, and the 467 mentioned above, benefited from the alleged artificial inflation because they sold more than they bought; they thus have no interest in pursuing (and may be disincentivited to pursue) the Inflation Claim. (*See id.* at ¶ 20.)  Others, who sold before they purchased, might have an interest in pursuing the Inflation Claim, but only if they could establish that a breach occurred after they sold. (*Id.*)  That is because a finding of an earlier breach would reduce their recovery, as it would mean that they were able to sell at (and thus benefit from) artificially inflated prices. (*Id.*)

Even among those potential class members who do have an incentive to pursue the Inflation Claim, there are conflicts.  Specifically, in order to maximize their individual recoveries, they will want to prove that defendants breached their duties on different dates.  Among potential class members with Inflation Claims, there are 321 different optimal Inflation

---

[8] *See, e.g., Amchem Prods.*, 521 U.S. at 626 (class certification inappropriate because "[i]n significant respects, the interests of those within the [proposed] single class are not aligned" respecting litigation objectives); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800-01 (3d Cir. 1995) (class certification improper because named plaintiffs "had no incentive to maximize the recovery" of the other class members in light of the disparity in settlement benefits); *Yeager's Fuel v. Pa. Power & Light Co.*, 162 F.R.D. 471, 478 (E.D. Pa. 1995) (adequacy not satisfied where "the named representative's interest in maximizing its own recovery provides a strong incentive to minimize the recovery of other class members.").

Claim breach dates. (*See id.* at ¶ 26, Ex. I.) In other words, there is no single date which all of them would have the same interest in proving to be the breach date for the Inflation Claim.

To the contrary, for each class member, proving a breach date other than their individual optimal breach date would reduce their recovery. (*Id.* at ¶ 24.) By way of illustration, and as set forth in the example of "Participant X" in Mr. Ross' Affidavit, if the defendants are found to have breached their duty after September 20, 2005, but before December 20, 2005, Participant X's potential losses would be $16,974.49. (*Id.* at ¶ 25.) If a breach is found prior to September 20, 2005, however, his potential recovery is reduced. (*See id.*)

The potential class members' numerous conflicts with respect to the Inflation Claim can be summarized as follows:

| Disincentivized class members: | Number of different optimal breach dates for remaining 5,199 class members: | Fletcher optimal breach date: | Lowe optimal breach date: |
|---|---|---|---|
| 1,960 | 321 | None | None |

Thus, potential class members have conflicting interests respecting: whether, and, if so, when additional disclosures should have occurred; what those disclosures should have said; and how those disclosures would have affected the price of Boston Scientific stock. The Inflation Claim therefore cannot be certified. *See Gordon*, 98 F.R.D. at 579; *Yaeger's Fuel*, 162 F.R.D. at 478.

**C.     The Prudence Claim Cannot Be Certified**

Nor could the Prudence Claim, even considered alone, be certified, again for two reasons: (1) the Prudence Claims of Fletcher and Lowe (if any) would be atypical; and (2) the absent class members' Prudence Claims are subject to conflicting interests.

**1.     Fletcher's and Lowe's Prudence Claims Are Not Typical**

As noted, Fletcher's and Lowe's claims are not typical. Further, to maximize their individual recoveries on the Prudence Claim, each class member would want to establish that the alleged breach occurred on the date when his or her gains (and claimed subsequent

losses) were greatest. (*See* Ross Aff. ¶ 31.) For Fletcher and Lowe, and assuming solely for purposes of argument that they could even have a cognizable Prudence Claim (*but see supra* § I.B), their optimal Prudence Claim breach date would be June 1, 2004. (*Id.* at ¶ 2, Ex. K.)

In contrast, there are 69 proposed class members for whom the first day of the Proposed Class Period, May 7, 2004, is the optimal Prudence Claim breach date. (*Id.* at ¶ 34.) In addition, there are 1,573 class members for whom 53 other dates are the optimal breach dates. (*Id.*) Given these variations, the Prudence Claims of Fletcher and Lowe are not typical.

## 2.    The Prudence Claim Is Riddled with Conflict

Further, significant conflicts among the proposed class members precludes certification of the Prudence Claim. One type of conflict results from the fact that 1,035 potential class members have no optimal Prudence Claim breach date at all, because they profited from their Company Stock Fund investments during the Proposed Class Period. (*Id.* at ¶ 35.) They therefore have no interest in pursuing the Prudence Claim and in fact are disincentivized to do so, because a finding of imprudence could result in their gains from allegedly imprudent investments being offset against, and thereby reducing, their potential individual recovery on the Inflation Claim. (*Id.*)

A second conflict inevitably results from the fact that potential class members who could even theoretically have an interest in pursuing a Prudence Claim would want to establish 55 different optimal Prudence Claim breach dates. (*See id.* at ¶ 34, Ex. K.) Anything else reduces their potential individual recovery. For example, in the case of Lowe, a finding of a May 7, 2004, breach date (the first day of the Proposed Class Period) could reduce his potential recovery by $21,351, from $32,824 to $11,473. (*Id.* at ¶ 32.) These conflicts among the potential class members with respect to the Prudence Claim can be summarized as follows:

| Disincentivized class members: | Number of different optimal breach dates for remaining 6,023 class members: | Fletcher optimal breach date: | Lowe optimal breach date: |
|---|---|---|---|
| 1,035 | 55 | June 1, 2004 | June 1, 2004 |

Moreover, there are thousands of potential class members whose optimal Prudence Claim breach date is *after* the disclosures respecting certain of the subjects discussed in the Complaint. For example, there are 1,503 potential class members who have an optimal breach date *after* August 4, 2004, the date of the last Taxus recall. (*Id.* at Ex. K.) They have no interest in pursuing a claim that Boston Scientific stock was an imprudent investment because of issues relating to the Taxus recalls; such a finding could result in an earlier breach date, reducing their potential recovery. (*See id.* at ¶ 35.) Likewise, 428 potential class members have an optimal breach date *after* announcement of the Medinol litigation settlement, and 578 have optimal breach dates *after* announcement of the DOJ settlement. (*See id.* at Ex. K.) None of them has any interest in pursuing arguments that defendants' breached any duties at some time prior to their optimal breach dates because that could reduce their potential recovery.

One Circuit Court of Appeals has considered similar conflicts and refused certification. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007). In *Langbecker*, like here, plaintiffs alleged that defendants breached their duty of prudence by continuing to offer company stock as an investment option in a 401(k) plan despite knowledge of the company's financial problems. The Fifth Circuit found that participants in the plan "were affected by the drop in price in dramatically different ways." *Id.* at 315. Like here, some of the class members had made money and some had lost money. In addition, like here, there was significant variation among the class members concerning their respective optimal prudence claim breach dates and resulting maximum recovery. *Id.*

The Fifth Circuit specifically rejected plaintiffs' argument that the conflicts only implicated "dividing the pie at recovery." *Id.* The court also dismissed the notion that all of the participants "shared the goal of attaining maximum payment to the Plan, regardless of the designated date," explaining:

> [u]nlike a securities fraud lawsuit, in which class members have a uniform purpose in proving material misrepresentations by company defendants at specific points in time, here the goal is to second-guess judgments made by the Appellants involving a multitude of considerations over a period of years. The facts, once

known, may bear out different legitimate theories as to when EDS Stock Fund became an imprudent investment; each theory will have different consequences for class members' recovery. (*Id.*)

Here too, the substantial conflicts go to the heart of when Boston Scientific stock supposedly became imprudent and when defendants therefore should have eliminated it as a Plan investment option. Class members have different and conflicting interests in demonstrating that imprudence occurred at different times and related to different events. These substantial conflicts also raise significant implications for discovery and trial because not all class members will have an interest in pursuing claims relating to all of the allegations in the Complaint. Given the proposed class members' directly antagonistic interests, certification is not appropriate.[9]

### D.    Plaintiffs Fail To Meet Their Burden Under Rule 23(b)

Even if plaintiffs could be found to have satisfied Rule 23(a), that would not be enough. Plaintiffs are also required to show that the proposed class action is appropriate under one of the subsections of Rule 23(b). Fed. R. Civ. P. 23(b). They fail.

### 1.    Certification Under Rule 23(b)(1)(B) Is Unavailable

Plaintiffs invoke Rule 23(b)(1)(B). (*See* Pl. Mot. at 15-16.) But, considering the multiple conflicts discussed above, certification of a *mandatory* class – i.e., denying potential class members the ability to opt out – "would create an unacceptable risk of unfair treatment of class members." *See Langbecker*, 476 F.3d at 318. In any event, Rule 23(b)(1) should not be allowed as the basis for certifying a class where the members' claims will turn on individual fact determinations. *See, e.g., In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 628 (E.D.

---

[9] The substantial conflicts cannot be remedied through the creation of subclasses. Given the seven different subjects that could serve as bases for the putative class members' claims and the possibility that a class member could have a claim with respect to anywhere from one to all seven of those subjects, dozens of subclasses would be required. And that would not account for the proposed class members' 321 different optimal Inflation Claim breach dates and 55 different optimal Prudence Claim breach dates. These differences would require numerous additional subclasses to avoid conflicts among the proposed class members. A case that would require hundreds of subclasses is simply not tenable. *See, e.g., In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Litig.*, 2004 WL 45504, at *3 (D. Minn. Jan. 5, 2004) ("the proposition of managing upwards of 25 subclasses" precluded certification because "the Court simply cannot fathom a workable trial plan, given the sheer number of subclasses."), *rev'd on other grounds*, 425 F.3d 1116 (8th Cir. 2005); *Yeager's Fuel*, 162 F.R.D. at 480 ("the various possible permutations of subclasses counsel against certification"). And, as discussed above, plaintiffs' claims for failure to supervise and failure to avoid conflicts are derivative of their Inflation and Prudence Claims. Thus, for the same reasons that the Inflation and Prudence Claims cannot be certified, neither can the derivative claims.

Tex. 2004); *Nelson v. Ipalco Enters., Inc.*, 2003 WL 23101792, at *10 (S.D. Ind. Sept. 30, 2003).

As noted above, under the Plan, participants had the absolute right to make their own investment decisions. (CCAC Ex. D at 147; Ross Aff. ¶ 7.) Moreover, it cannot seriously be disputed that the Company's public filings discussed risks associated with the DOJ Investigation, the Medinol Litigation, the Taxus stents, and FDA compliance. (Cunha Aff. Ex. 8 at 11-12, 14-15, 26-28, 65-67, Ex. 9 at 19-23, 98-99, 101, 103 & Ex. 10 at 18, 28, 34-36.) The disclosures recited that these risks could materially affect the Company's performance. (*Id.*) *See generally In re Boston Scientific Corp. Sec. Litig.*, 490 F. Supp. 2d at 153-54, 156-57. And, as noted above, just the claims of the named plaintiffs themselves present several individual questions respecting such matters as reliance and causation. These same types of issues will be presented with respect to each individual proposed class member, including questions concerning what they read (or did not read) in deciding to start, stop, or change their Plan investments. These are precisely the types of individualized questions that cannot be answered on a class-wide basis, and thus preclude certification under Rule 23(b)(1)(B).

## 2.    Certification Under Rule 23(b)(1)(A) Is Unavailable

Plaintiffs' invocation of Rule 23(b)(1)(A) (*see* Pl. Mot. at 16) is also wrong. Certification under that provision is not appropriate if the primary relief sought is monetary. *Allen v. Holiday Universal*, 2008 WL 746613, at **24-26 (E.D. Pa. Mar. 18, 2008). Because the Court has dismissed all purported claims for equitable relief, *In re Boston Scientific Corp. ERISA Litig.*, 506 F. Supp. 2d at 76, no class can be certified under Rule 23(b)(1)(A).

## CONCLUSION

Plaintiffs' Motion for Class Certification should be denied in its entirety.

Dated:  May 28, 2008

/s/ John Gueli
**SHEARMAN & STERLING LLP**
Stuart J. Baskin (*Pro Hac Vice*)
John Gueli (*Pro Hac Vice*)
Kirsten Nelson Cunha (BBO #634520)
599 Lexington Avenue

New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

And

**WILMER CUTLER PICKERING
HALE AND DORR LLP**

William H. Paine (BBO #644869)
Timothy Perla (BBO #660447)
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Defendants*

04/492576

21

## CERTIFICATE OF SERVICE

I, John Gueli, hereby certify that a true copy of the above document was served upon the attorney of record for each party via ECF or PDF email.

/s/ John Gueli
John Gueli